BRONSTER, LLP
*Proposed Counsel for Debtor*
156 West 56th Street, Suite 902
New York, New York 10019
(347) 826-5051
J. Logan Rappaport, Esq.
lrappaport@bronsterllp.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re

    KENSINGTON REALTY GROUP CORP.,         Case No. 1-22-42817-ess

    Debtor.         Chapter 11

-----------------------------------------------------------------X

**MOTION FOR ENTRY OF AN ORDER: (I) DIRECTING STATE COURT RECEIVER TO TURNOVER RENTS TO DEBTOR PU RSUANT TO 11 U.S.C. § 543, (II) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2) AND BANKRUPTCY RULE 4001 ON AN INTERIM BASIS AND PROVIDING ADEQUATE PROTECTION THEREFOR PURSUANT TO 11 U.S.C. §§ 361 AND 362, AND (III) SCHEDULIG A FINAL HEARING ON USE OF CASH COLLATERAL**

**TO:    THE HONORABLE ELIZABETH S. STONG**
        **UNITED STATES BANKRUPTCY JUDGE:**

Kensington Realty Group Corp. ("Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case, by its proposed counsel, Bronster, LLP, as and for its application (the "Application"), seeking the entry of an order: (i) pursuant to Section 543 of title 11 of the United States Code (the "Bankruptcy Code"), directing Lawrence Price of Corme Accounting, Tax, and Fiduciary Consultants LLC ("Receiver"), the state court appointed receiver with respect to Debtor's real properties located at Amersfort Place (the "Amersfort Property"), Brooklyn, New York and 2408 Clarendon Road, Brooklyn, New York (the "Clarendon Property," and together with the Amersfort Property, the "Properties"), to turnover any and all rents and other funds, including security deposits, in his possession, custody, and control that

1

constitute property of the bankruptcy estate, and turnover copies of all documents related to the Properties including any and all leases with tenants, and to file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into his possession, custody, or control; (ii) authorizing Debtor's use of cash collateral pursuant to 11 U.S.C. § 363(c)(2) and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on an interim basis and providing adequate protection therefor pursuant to 11 U.S.C. §§ 361 and 362, and scheduling a final hearing on use of cash collateral; and, (iii) for such other and further relief as the Court deems just and proper, respectfully sets forth and represents as follows:

## JURISDICTION AND STATUTORY PREDICATES

1. This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district pursuant to 28 §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory grounds for this Application are Sections 105(a), 361, 362, 363, and 543 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules. of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On November 10, 2022 (the "Filing Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

4. Debtor is currently in possession of its assets and management of its affairs as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. No trustee, examiner or statutory committee has been appointed in Debtor's case.

6. Debtor is in the business of ownership and management of the two Properties. The Clarendon Property is a 16 unit residential building that consists of 14 2BR units and two 1BR units. The Amersfort Property is a two family home, however it is currently not occupied on account of a fire that occurred in 2008, which resulted in considerable damage. Only the Clarendon Property is presently occupied and generating rental proceeds that constitutes cash collateral.

7. Debtor's secured debt consists of a mortgage, dated July 20, 2006, held by Emigrant Funding Corporation ("Emigrant") against both Properties.

8. In or about 2011, Emigrant Funding Corporation ("Emigrant"), the mortgagee as to the Properties, commenced an action (the "Foreclosure Action") to foreclose upon its mortgage against the Properties in the Supreme Court of the State of New York, Suffolk County (the "State Court").

9. By Order, dated July 31, 2014, the State Court entered an Order Appointing Receiver (the "Receiver Order") in the Foreclosure Action. The Receiver Order provided, *inter alia*, that the Receiver was appointed with the usual powers and direction as receiver for the benefit of Emigrant of all the rents and profits due and owing during the pendency of the Foreclosure Action with respect to the Clarendon Property and that he had the power to demand, collect, and receive rents from tenants in possession of the Clarendon Property. (A true and correct copy of the Receiver Order is annexed hereto as **Exhibit "A"**.)

10. On June 27, 2022, Emigrant obtained a Judgment of Foreclosure and Sale (the "Foreclosure Judgment") in the Foreclosure Action and an auction sale of the Properties was thereafter scheduled for November 10, 2022, which precipitated Debtor's filing of the instant

chapter 11 bankruptcy proceeding. (A true and correct copy of the Foreclosure Judgment is annexed hereto as **Exhibit "B"**.)

11. Pursuant the Foreclosure Judgment, Emigrant is due not less than $3,357,340.87 with respect to the Mortgage and associated promissory note.

12. Debtor requires the protection of the Bankruptcy Court in order to help sustain and protect its operations, including recovering rents related to the Properties, until such time as a sale or restructuring can be accomplished. Debtor believes that, with the assistance of counsel and with the breathing space afforded by the bankruptcy filing, it will be able identify a solution which maximizes the value of its assets, is in the best interests of its creditors, and affords the greatest possible recovery.

## RELIEF REQUESTED

### A. Turnover of Rents and Rights thereto from Receiver

13. By the Application, Debtor seeks two forms of relief. First, Debtor seeks to rest control over the rents and leases at the Clarendon Property from the Receiver and Emigrant as the rents and leases constitute property of the bankruptcy estate pursuant 11 U.S.C. § 541. Section 541(a)(1) of the Bankruptcy Code defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." "Courts define property of the estate broadly." *In re South Side House, LLC*, 474 B.R. 391, 402 (Bankr. E.D.N.Y. 2012). As noted by the Court of Appeals for the Second Circuit, estate property includes "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *Id*. (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.,* 538 F.3d 116, 122 (2d Cir. 2008)). Property of the bankruptcy estate includes post-petition "proceeds, product, offspring, rents, or profits of or from property of the estate." Section 541(a)(6).

14. On July 20, 2006, Debtor assigned its rights to leases and rents related to the Properties to Emigrant (the "Assignment"). (A true and correct copy of the Assignment is annexed hereto as **Exhibit "C"**.)

15. However, the fact that Debtor executed the Assignment is not dispositive of the issue of title with respect to the rents and leases related to the Properties as, under New York law, a rent assignment may be a source of additional security for a mortgage loan as opposed to an absolute and unconditional assignment of title. 474 B.R. at 402-03 (citing *Fin. Ctr. Assocs. of E. Meadow, L.P. v. TNE Funding Corp. (In re Fin. Ctr. Assocs. of E. Meadow, L.P.*, 140 B.R. 829, 832 (Bankr. E.D.N.Y. 1992)). "When an assignment is for additional security, the lender has a lien on the rents, but title to the rents remains with the borrower." 474 B.R. at 403. The majority of New York courts have held that an absolute assignment of rents or leases is not allowed notwithstanding the language contained in the assignment. *Soho 25 Retail, LLC v. Bank of Am. (In re Soho Retail, LLC)*, 2011 WL 1333084, at *6 (Bankr. S.D.N.Y. Mar. 31, 2011). This majority view is predicated upon New York's "lien" theory of mortgages which provides that a mortgage creates a lien but does not transfer title to the mortgagee. 474 B.R. at 403.

16. Assignments of rents and leases are found to be additional security even if they contain terms such as "absolute" and "unconditional." *Id.* "When an assignment is for additional security, a mortgagee must generally take certain affirmative steps after default in order to trigger its rights," such as appointing a receiver to collect rents, taking possession of the subject properties, starting a foreclosure action, etc. *Id.*, at 404. (internal citations omitted). The mere right to collect rents under an assignment does not confer title upon the assignee/mortgagee and title to the rents and leases remains with the borrower even after a default, the commencement of a foreclosure action has been commenced, the appointment of a receiver, and the entry of a

foreclosure judgment. *Id*. at 404-05.

17. Moreover, where an assignment of rents and leases is part of a mortgage securing a real estate loan, such context indicates that the assignment is in the nature of a pledge of additional security. *Id*., at 411. The Assignment at issue here was in the context of a real estate loan suggesting it was in the nature of additional security. Moreover, the Assignment does not include any language suggesting that it was an absolute and unconditional transfer of title to the rents and/or leases associated with the Properties other than the statement in Paragraph 1 that it constituted a "present, absolute assignment of the Leases and Rents." Other language indicates that it was intended as additional security. For instance, (i) Section "A" expressly provides that the Assignment was made "for the purposes of securing" payment of the mortgage debt, (ii) Paragraph 3 of the Assignment provides that Emigrant would have no obligations or liabilities whatsoever in connection with the leases (including those related to any obligations or undertakings or covenants contained in the leases; (iii) Paragraph 15 of the Assignment expressly states that is shall become null and void upon payment in full of the mortgage debt.

18. By virtue of the foregoing, the Assignment was merely intended for additional security and did not have the effect of transferring title over the leases and rents related to the Properties from Debtor to Emigrant.

19. "Where a receiver has been appointed prepetition to collect rents, a debtor may seek authorization to recover the rents collected by the receiver and to collect future rents" as Section 543 of the Bankruptcy Code requires a receiver or other custodian to deliver to the debtor any rents that are in his possession, custody, or control. *Id*., at 405. Courts in the Second Circuit have routinely concluded that prepetition rents are property of the bankruptcy estate even when debtor lost possession of the rents to a receiver. *Id.; In re Temple Court Associates*, 1996

WL 537886, at *4-5 (S.D.N.Y. 1996); *In re Koula Enterprises, Ltd.*, 197 B.R. 753 (Bankr. E.D.N.Y. 1996).

20. By virtue of the foregoing, Debtor respectfully requests that the Court enter an order directing the Receiver to deliver any and all rents in his possession, to cease collecting rents related to the Properties, and to provide an accounting of all rents received by him.

**B. Use of Cash Collateral**

21. Debtor also seeks authority, pursuant to Section 363(c)(2)(B), 361, 362, and Bankruptcy Rule 4001(b), to use cash and cash equivalents which constitute cash collateral, as that term is defined below (the "Collateral") in which Emigrant asserts a security interest, substantially in accordance with the terms and conditions set forth in the proposed Interim Order (the "Order"), annexed hereto as **Exhibit "D"**. Debtor believes that Emigrant is the only party that asserts a security interest in Debtor's property which may constitute Collateral.

22. The proposed Order grants Debtor the authority to use the Collateral pursuant to Sections 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) to the extent necessary to continue the operation of its business and preserve the value of its estate during the course of the Chapter 11 case.

23. Section 363(a) of the Bankruptcy Code provides that "cash collateral" means "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest . . . whether existing before or after the commencement of a case under this title."

24. Section 363(c)(1) of the Bankruptcy Code provides that if the business of the

debtor is authorized to be operated, the debtor may enter into transactions in the ordinary course of business, without the need for notice or a hearing, and "may use property of the estate in the ordinary course of business without notice or a hearing."

25. However, pursuant to Section 363(c)(2) of the Bankruptcy Code, a debtor in possession "may not use, sell or lease cash collateral under paragraph (1) of this subsectuion unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

C. **Adequate Protection**

26. The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained pre-bankruptcy. *In re 495 Central Park Ave. Corp.*, 136 B.R. 626 (Bankr. S.D.N.Y. 1992). Adequate protection is designed to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. *In re Nice*, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006).

27. Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).

28. The Order provides that, as adequate protection for the Debtor's use of the Collateral in which Emigrant asserts an interest and for the purpose of adequately protecting them from diminution, Debtor shall grant Emigrant a replacement lien in its cash collateral, including its post-petition rents and leases and the proceeds of the foregoing, to the extent that Emigrant had a valid security interest in said pre-petition assets on the Filing Date and in the same priority as existed on the Filing Date (the "Replacement Lien"), subject to investigation by

any creditors or committee appointed in Debtor's case. Emigrant continues to be adequately protected by virtue of its mortgage against the Properties, as well.

29. The Replacement Lien shall be subject and subordinate only to: (a) United States Trustee fees, if any; (b) the fees and expenses of the Subchapter V trustee; (c) professional fees of duly retained professionals in this Chapter 11 case as may be awarded pursuant to Sections 330 or 331 of the Bankruptcy Code; (d) the fees and expenses of a hypothetical Chapter 7 trustee to the extent of $10,000.00; and (d) the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to Sections 502(d), 544, 545, 547, 548, 550, and/or 553 of the Bankruptcy Code ("Avoidance Actions") (collectively, the "Carve-Outs").

30. In addition to the liens and security interests proposed to be granted pursuant hereto, as additional adequate protection for the Debtor's use of Cash Collateral, Debtor plans to pay to Emigrant, the pre-default contractual mortgage payments on a monthly basis once Debtor begins receiving the rents due with respect to the Clarendon Property, which Debtor hopes will be memorialized in a stipulation with Emigrant to be so-ordered by the Court.

31. Debtor submits that, in order to preserve the Debtor's estate and ensure the viability of Debtor during the Chapter 11 case, it is essential that the Court approve the use of Cash Collateral by Debtor, grant Emigrant the Replacement Lien as set forth herein and in the Order.

## **The Budget**

32. Debtor is unable presently to provide a proposed budget as it has not been in control of the Properties and the rents flowing therefrom since the appointment of the Receiver. As such, it has not been paying any of the normal operating expenses associated with the management of the Properties. Upon information and belief, Emigrant has been paying the

insurance, taxes, and other costs associated with the Properties for several years. Upon Debtor wresting control over the leases and rents from the Properties and securing the necessary information regarding the status of the tenancies and occupancies and the present and anticipated expenses related to the Properties, Debtor will propose, circulate, and file a proposed budget in connection with the continued use of the Cash Collateral. Such budget will include all reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of operating the Properties for the period set forth in such budget. Debtor believes that the use of Cash Collateral in accordance with such budget will provide Debtor enough liquidity to ensure payment of administrative expenses as they become due and payable during the period covered by such budget.

## Notice

33. This Motion is being served on notice to Emigrant, the Receiver, Receiver's counsel, the Subchapter V Trustee, and the Office of the United States Trustee.

**WHEREFORE**, Debtor respectfully requests that the Court grant the Motion in its entirety and enter the Order, together with such other and further relief as is just and proper.

Dated: New York, New York
November 16, 2022

BRONSTER, LLP
*Proposed Attorneys for Debtor*

 *s/J. Logan Rappaport*
J. Logan Rappaport
156 West 56th Street, Suite 902
New York, New York 10019
(347) 826-5051
lrappaport@bronsterllp.com