| UNITED STATES BANKRUPTCY COURT | RETURN DATE: 12/02/22 |
| --- | --- |
| EASTERN DISTRICT OF NEW YORK | TIME: 10:30 A.M. |

-----------------------------------------------------------------X

In re:

KENSINGTON REALTY GROUP CORP.,  CASE NO: 22-42817-ESS
                                CHAPTER 11

                Debtor.

-----------------------------------------------------------------X

**OBJECTION OF EMIGRANT FUNDING CORPORATION TO
DEBTOR'S APPLICATION FOR AN ORDER (I) DIRECTING THE STATE
COURT RECEIVER TO TURNOVER RENTS TO DEBTOR PURSUANT
TO 11 U.S.C. SECTION 543, (II) AUTHORIZING THE DEBTOR'S USE OF
CASH COLLATERAL PURSUANT TO 11 U.S.C. SECTION 363(c)(2) AND
BANKRUPTCY RULE 4001 ON AN INTERIM BASIS AND PROVIDING ADEQUATE
PROTECTION THEREFOR PURSUANT TO 11 U.S.C. SECTIONS 361 AND 362, AND
(III) SCHEDULING A FINAL HEARING ON THE USE OF CASH COLLATERAL**

      Emigrant Funding Corporation ("Emigrant") by its attorneys, Terenzi & Confusione, P.C., submits the instant objection (the "Objection") to Kensington Realty Group Corp.'s ("Kensington" or the "Debtor") Application For An Order (I) Directing The State Court Receiver To Turnover Rents To Debtor Pursuant To 11 U.S.C. Section 543, (II) Authorizing The Debtor's Use Of Cash Collateral Pursuant To 11 U.S.C. Section 363(C)(2) And Bankruptcy Rule 4001 On An Interim Basis And Providing Adequate Protection Therefor Pursuant To 11 U.S.C. Sections 361 And 362, and (III) Scheduling A Final Hearing On The Use Of Cash Collateral (the "Cash Collateral Motion"), and in support there of respectfully represents and says:

## BACKGROUND

      1.      Emigrant is the holder of a Commercial Real Estate Mortgage Note (the "Note") dated July 20, 2006 given by the Debtor in the principal amount of $950,000.00. The

Note is secured by a Commercial Mortgage given by the Debtor on the real properties located at 109 Amersfort Place, Brooklyn, New York (the "Amersfort Property") and 2408 Clarendon Road, Brooklyn, New York (the "Clarendon Property" and collectively with the Amersfort Property, the "Properties"). A copy of the Note and Mortgage is attached hereto as Exhibit "A".

2. Pursuant to the terms of the Note, monthly payments are to be made to Emigrant. The Debtor defaulted on the September 1, 2010 payment due under the Note and on each payment due thereafter. As a result of the Debtor's default, on July 14, 2011, Emigrant commenced a foreclosure action in the Supreme Court of the State of New York, County of Suffolk under Index No. 15896/2011 (the "State Foreclosure Action") to foreclose upon its Mortgage against the Properties.

3. By Order dated July 31, 2014, the State Court entered an Order Appointing Receiver (the "Receiver Order") in the State Foreclosure Action. A copy of the Receiver Order is attached hereto as Exhibit "B".

4. On June 27, 2022, Emigrant obtained a Judgment of Foreclosure and Sale (the "Foreclosure Judgment'), a copy of which is attached hereto as Exhibit "C", and an auction of the Properties was thereafter scheduled for November 10, 2022.

5. On November 10, 2022 (the "Filing Date"), the Debtor filed a petition with the Clerk of this Court under Chapter 11 of the Bankruptcy Code.

6. The Debtor is in the business of ownership and management of the two Properties. The Clarendon Property is a 16 unit residential building. The Amersfort Property is a two family home that has not been occupied for some 14 years as a result of a fire that occurred in 2008.

7. On or about November 16, 2022, the Debtor filed the Cash Collateral Motion seeking, among other things, the use of cash collateral to pay the monthly mortgage and ordinary and necessary operating expenses of the Property.

8. For the reasons set forth below, Emigrant opposes the Debtor's Motion and requests that it be denied in its entirety.

## OBJECTION

**Turnover of Rents and Rights thereto from the Receiver**

9. At the outset, based on the Debtor's history, Emigrant strongly opposes the Debtor's request for the turnover of rents and rights from the Receiver on a going forward basis.

10. Prior to the appointment of the Receiver, when the Debtor was managing the Properties and collecting rents, the Debtor's failure to maintain the Clarendon Property led to New York City's Department of Housing, Preservation and Development imposing hundreds of violations, many of them classified as "C" violations constituting immediate hazards to the building's tenants. While most of these violations were ultimately resolved by the Receiver, it is clear that the Debtor cannot be trusted to competently maintain or manage the Properties.

11. Adding to the above, a fire occurred at the Amersfort Property in 2008. Despite the Debtor being in possession and control of that Property until the Receiver took possession in 2014, the Property remains a vacant burnt-out shell.

12. Moreover, any failure by the Debtor to properly maintain the Properties will only serve to further diminish the value of Emigrant's collateral.

13. Accordingly, Emigrant requests that the Debtor's request that the Court enter an order directing the Receiver to deliver any and all rents in his possession and cease

collecting rents related to the Properties, be denied.

**Use of Cash Collateral**

14. Emigrant also opposes the Debtor's request to use cash collateral.

15. Bankruptcy Code Section 363(a) provides that "cash collateral means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property."

16. The Mortgage at issue contains an assignment of rents clause and therefore, the rents collected by the Debtor constitute cash collateral within the meaning of Sections 363(a) and (c)(2).

17. Section 363(c)(2) of the Bankruptcy Code provides that

> (2) the trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless -
> (A) each entity that has an interest in such cash collateral consents, or
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

As a result of Emigrant's lien and security interests in the collateral and pursuant to the clear language of Section 363(c)(2) of the Bankruptcy Code, the Debtor is prohibited from using cash collateral without Emigrant's consent or the Court's authorization after notice and a hearing.

18. Emigrant opposes the Debtor's use of cash collateral since in this case the debt owed to Emigrant greatly exceeds the value of the Properties and accordingly, there is clearly no equity in the Properties. Therefore, the Debtor's use of cash collateral is detrimental to Emigrant.

19. Emigrant's lien is currently in excess of $5,009,023.62 while the combined value of the Properties is only $1,780,000.00 based on appraisals of the Amersfort and the Clarendon Properties conducted on January 8, 2022, copies of which are attached hereto as Exhibit "D" and "E", respectively. Accordingly, Emigrant will not fund the Debtor's bankruptcy with its cash collateral.

20. In addition, the Debtor fails to offer Emigrant any real adequate protection. Pursuant to the Cash Collateral Motion, the Debtor merely offers Emigrant a replacement lien. However, since there are no new assets that would require or confer a benefit with respect to a replacement lien, and there is no equity in the Properties, this offer is utterly meaningless.

21. Rather, the Debtor suggests that Emigrant will be adequately protected by the Debtor tending the monthly contractual amount that was due on the mortgage pre-default. As set forth in the background, this mortgage has been in default for over 11 years, since 2011. Since that default, interest has been accruing, together with Emigrant being responsible for out-of-pocket expenses such as taxes and insurance when the Property did not generate sufficient income. As a result, as stated above, the outstanding amount on the mortgage is now over Five Million Dollars. Despite this, the Debtor offers the ridiculous proposition that Emigrant would be adequately protected if they paid the monthly debt service on the contractual amount based on the original outstanding balance of $950,000.

22. Clearly, Debtor's use of any of the cash collateral will prejudice Emigrant's position and there is no adequate protection or substitute collateral offered by the Debtor.

23. Finally, Emigrant will not consent to the use of any of its cash collateral, nor should the Court approve same, without a comprehensive budget which insures that no

amounts other than for the strict preservation of the collateral will be expended. At this time, the Debtor has no budget which can be reviewed by Emigrant. While Emigrant understands that the information necessary to formulate a budget is currently in possession of the Receiver, it is impossible for Emigrant to evaluate the Debtor's request and ultimate use of cash collateral without a working budget which establishes that the only funds to be expended are to preserve Emigrant's collateral. The application by the Debtor indicates that the Debtor intends to use Emigrants collateral for more than just the preservation of the value of the collateral. Emigrant objects to any such use. The Debtor has manipulated the system so as to forestall loss of the Properties despite having been in default for over 12 years and provides no indication of any ability or good faith intention of compensating Emigrant for its losses.

24. Moreover, given the amount of debt owing to Emigrant and the value of the Properties, Emigrant does not see that there is a realistic prospect for a successful reorganization.

25. Based on the foregoing, Emigrant respectfully requests that this Court deny the Debtor's Cash Collateral Motion in its entirety enter an Order: (i)denying the Debtor's Cash Collateral Motion in its entirety, and (ii) granting Emigrant such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
November 22, 2022

**TERENZI & CONFUSIONE, P.C.**
Attorneys for Emigrant Funding Corp.

BY:  \s\ Ronald M. Terenzi
Ronald M. Terenzi, Esq.
401 Franklin Avenue, Suite 304
Garden City, New York 11530
516-812-0800

To:

J. Logan Rappaport, Esq.
Proposed Attorneys for Debtor
Bronster, LLP
156 West 56th Street, Suite 902
New York, New York 10019

Lawrence Price
Receiver
829 East 10th Street, Suite 2H Brooklyn, New York 11230

Lawrence Price
Receiver
126 Limestone Drive
Reading, PA 19606

Gregory LaSpina, Esq
Borchert & LaSpina, P.C.
Counsel for Receiver
19-02 Whitestone Expressway, Suite 302
Whitestone, NY 11357

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street Suite 1006
New York, NY 10014

Charles N. Persing, CPA
Subchapter V Trustee
347 Mt. Pleasant Avenue
West Orange, NJ 07052