**EXHIBIT A**



Emigrant Funding Corp.
6 East 43rd Street • 9th Floor
New York, New York 10017

Tel: (212) 850-4880
Fax: (212) 850-4881

May 27, 2014

Elizabeth Cohen, Esq.
Associate Counsel
Real Estate Finance Division
New York State Department of Financial Services
One State Street
New York, NY 10004-1511

Re: Complaint of Victoria Stennett – Kensington Realty Group Corp. (BKM-2014-1046678)
Emigrant Funding Corporation Loan No. ▓▓▓▓▓▓
Secured Property Address: a) 2408 Clarendon Road, Brooklyn, NY and
b) 109 Amersfort Place, Brooklyn, NY

Dear Ms. Cohen:

Your email dated May 22, 2014 to Ms. Laurie Bigman of Emigrant Bank (the "Bank") regarding the above matter has been referred to me for a response.

This $950,000 commercial mortgage, which secures the investment properties referenced above, is the subject of a contentious foreclosure which has been pending since July 14, 2011. The matter is now before Justice Ingrid Joseph of Kings County Supreme Court. It appears that the Bank's recent application for appointment of a receiver relative to the foreclosing multi-family building at 2408 Clarendon Road is the motivation behind Ms. Stennett's complaint to your office. The Bank's application was made necessary by Ms. Stennett's failure to maintain the Clarendon Road building which led to New York City's Department of Housing, Preservation and Development imposition of hundreds of violations, many of them classified as "C" violations constituting immediate hazards to the building's tenants. Given this history, the Bank has determined that the appointment of a receiver who would collect the rents and use them to properly manage the building is necessary and prudent.

The subject matter of the Complaint has been addressed by the Bank on numerous occasions, most recently in a letter to Ms. Allison Greenup of the Federal Deposit Insurance Corporation (FDIC), dated January 26, 2011 ("Greenup Letter"). A copy of the Greenup Letter is enclosed for your reference. Also enclosed are copies of the Bank's letters to a) Mr. Walter Lee, New York State Banking Department dated December 20, 2010, b) State Senator Kevin S. Parker dated December 8, 2009 and c) Kensington Realty Group Corp. dated May 22, 2009, all responsive to the same Complaint. These letters set forth the Bank's position concerning the Ms. Stennett's Complaint and provide details of the long and complicated history of the foreclosure action.

Finally, enclosed please find a May 7, 2011 letter from Mr. Paul Nash, Deputy to the Chairman for External Affairs of the FDIC, to Senator Charles E. Schumer concluding that Emigrant Bank acted prudently and closing the FDIC's investigation of a similar complaint filed by Ms. Stennett

I trust the enclosures are a satisfactory response in this matter. Thank you.

Very truly yours,

Peter Hollnsteiner
President – Emigrant Funding Corporation



January 13, 2011

Ms. Allison A. Greenup
Consumer Affairs Specialist
Federal Deposit Insurance Corporation
Division of Supervision and Consumer Protection
2345 Grand Boulevard, Suite 100
Kansas City, MO 64108

5 EAST 42ND STREET, NEW YORK, NY 10017

Daniel C. Hickey
Senior Vice President
General Counsel
Telephone: (212) 850-4851
Fax: (212) 850-4424
Email: hickeyd@emigrant.com

RE: Complaint of Victoria Stennett – Kensington Realty Group Corp.
Ref. No.: OLA2011 W-000024

Dear Ms. Greenup:

Your letter dated January 12, 2011 to Mr. Weaver of this office regarding the above matter has been referred to me.

The subject matter of the complaint enclosed with your letter has been addressed by the Bank on numerous occasions, most recently in a letter to Mr. Walter Lee, New York State Banking Department, dated December 20, 2010. A copy of this letter, as well as copies of letters to State Senator Kevin S. Parker dated December 8, 2009 and to Kensington Realty Group Corp. dated May 22, 2009, responding to the complaint are enclosed herewith.

I trust the enclosures are a satisfactory response in this matter.

Thank you.

Very truly yours,

[signature]

cc: Mr. Peter Hollnsteiner, Senior Vice President
Emigrant Funding Corp.

Mr. James A. Raborn, Esq.
First Vice President & Director



# EMIGRANT BANK

5 East 42nd Street
New York, NY 10017

James A. Raborn, Esq.
First Vice President & Director
Foreclosures & Real Estate Owned
Telephone: (212) 850-4828
Fax: (212) 850-3828
Email: rabornj@emigrant.com

December 20, 2010

**VIA FEDERAL EXPRESS**

New York State Department of Banking
One State Street
New York, NY 10004-1511

Attention: Walter Lee

Re: Loan No. ▊▊▊▊▊▊
Kensington Realty Group
(Victoria Stennett-Bailey)

Dear Mr. Lee:

Emigrant Funding Corporation ("Emigrant") is in receipt of the complaint submitted by Ms. Stennett-Bailey in connection with the referenced loan. The subject matter of this complaint has been previously addressed by Emigrant in writing, including as outlined in a letter to the Honorable Senator Kevin S. Parker. The complaint continues to ignore the substance of the letters sent by Emigrant. Copies of these letters are enclosed herein.

This **commercial** loan was secured by two properties. Serious breaches of the loan documents occurred in connection with both properties. First, with regard to 109 Amersfort Place, Brooklyn, New York, a fire occurred at this property and Emigrant learned that the borrower failed to maintain adequate insurance in connection with this property. In fact, upon information and belief, the insurance for this property was canceled due to the borrower's refusal to execute an "arson affidavit" as requested by the borrower's insurer. Section 4 of the applicable mortgage requires the borrower to "keep the Mortgaged Property insured against loss or damage by fire, flood, and such other hazards, risks and matters, including, without limitation, business interruption, rental loss, public liability, and boiler damage and liability." A copy of the Mortgage is enclosed with this letter.

In light of the cancellation of this insurance, Emigrant exercised its right to insure the property against loss. This insurance ("forced placed") does not insure the borrower's interest in the mortgaged premises but only insures Emigrant's interest in the property. In other words, the borrower has no right to the insurance proceeds in this instance. Moreover, even if this were not the case, Section 4(b) of the Mortgage gives Emigrant the absolute right to apply the proceeds of any insurance claim against the amounts due on the loan. As will be discussed in greater detail below, Emigrant, as an accommodation to the

borrower, made a proposal that would have allowed the use of these funds to restore the property. However, Emigrant asked for additional security as a condition of such an agreement.

With respect to 2408 Clarendon Road, Brooklyn, New York, there were a number of HPD violations impacting the property at the time of closing. These violations were not rectified and, in fact, Emigrant learned in 2009 that the number of violations on this property increased to over 300 violations and that the property was placed on the HPD's Alternative Enforement Program. Section 9 of the Mortgage requires the borrower to "promptly comply with all laws, orders and ordinances affecting the Mortgage Property or the use thereof." The existence of this many HPD violations on the borrower constitutes a second default under the Mortgage and, more importantly, adversely impacts the viability of the Clarendon Road property as collateral for this loan. The HPD assessed charges in connection with inspections/repairs: about $30K worth currently outstanding. If not paid, theses charges will become a tax lien against the premises this upcoming year.

Given all of the above circumstances, Emigrant determined that it would permit the use of the insurance proceeds to restore the Amersfort property but required additional collateral be pledged to secure the loan under the circumstances (at least until the property was fully restored) and the execution of a detailed property restoration agreement. The borrower rejected Emigrant's offer repeatedly. Accordingly, Emigrant will exercise its right to have the insurance proceeds associated with the fire, as was and is its right, applied against the loan.

I trust that this sufficiently responds to the complaint and the Department of Banking's inquiry into this matter.

Very truly yours,

James A. Raborn
JAR

cc: Daniel C. Hickey, Esq., General Counsel

bcc: Richard Wald
    Peter Hollnsteiner
    Filippo Ruggerio



5 East 42nd Street
New York, NY 10017

James A. Raborn, Esq.
First Vice President & Director
Foreclosures & Real Estate Owned
Telephone: (212) 850-4828
Fax: (212) 850-3828
rabornj@emigrant.com

December 8, 2009

<u>**Via Regular Mail and Certified Mail RRR**</u>

Honorable Senator Kevin S. Parker
1300 Flatbush Avenue
Brooklyn, New York 11210

    Re:    Emigrant Funding Corporation, Loan No. ▮
            Borrower: Kensington Realty Group

Dear Senator Parker:

Your letter dated November 18, 2009 to Howard Milstein of Emigrant Bank was referred to my attention for response. Respectfully, from the content of your letter, it would appear that you may not have been fully informed as to the status of this matter or the actions of Emigrant Funding Corporation (EFC) in connection with the referenced loan.

This is a commercial loan. It is a $950,000 commercial mortgage loan originated on July 20, 2006. Two properties – 109 Amersfort Place, Brooklyn, New York and 2408 Claredon Road, Brooklyn, New York – collateralize this loan.

At the time of origination, there were a number of outstanding HPD violations impacting the Claredon property. In the more than three (3) years since the time this loan was made, the number of HPD violations has increased to over 300 violations and the property has been placed in the HPD's Alternative Enforcement Program. On May 22, 2009 (copy of the letter attached)[1], Emigrant wrote the borrower requesting a full and complete explanation of the borrower's efforts to cure the violations and comply with the HPD's Alternative Enforcement Program. No response was ever received in connection with this letter.

---

[1] I forwarded a copy of this letter to counsel for the borrowers on July 14, 2009. See copy also attached. No response was ever received in connection with this letter.

Your letter indicates a protest currently exists with regard to the HPD violations; however, EFC has never received any documentation from the borrower reflecting the fact that any form of protest has been lodged. I would also add that this borrower has had over three years to correct violations that existed in connection with the Claredon property and appears to have taken no corrective action in this lengthy period of time.

The continued existence of HPD violations is a clear violation of the terms of the borrower's mortgage, entitling EFC to declare a default and purpose any and all remedies available to it under the loan documents. This was also explained to Kensington in the May 22, 2009 letter referenced above.

As you note in your letter, problems also exist with regard to the second property securig this loan. First, a fire occurred at the Amersfort property. Second, the borrower's insurance on this property was canceled. This too is a violation of the terms and conditions of the borrower's loan documents. Regardless, EFC was able to independently secure forced placed insurance on the Amersfort property and EFC's insurance carrier paid certain sums in connection with the fire damage claim. It is important for you to know that EFC's forced placed insurance **does not insure the borrower's interest in the subject premises but only insures EFC's interest in the property**. That is, Kensington Realty Group has no right to any portion of the funds disbursed under EFC's forced placed insurance policy even though Kensington is responsible for the premium under the terms of the loan documents.

As you will see from the May 22, 2009 letter, despite the fact that Kensington did not have any right to the forced placed insurance proceeds, EFC offered to allow Kensington to use these funds under certain specific conditions. First, Kensington would have to enter into a Property Restoration Agreement, which would govern the orderly disbursement of the insurance proceeds and cover the costs incurred by EFC in preparing the agreement and monitoring the restoration project. Second, because of the uncorrected situation related to the Claredon property and the absence of insurance on the Amersfort property, EFC sought a pledge of additional collateral to secure the obligations of Kensington to EFC.

Kensington has not sought to avail itself of the offer made by EFC seven (7) months ago. Despite a number of clear defaults under Kensington's loan documents, EFC has not yet declared a default and EFC has not applied the insurance proceeds, as is it right under the loan documents, to this loan. However, I am constrained to advise that EFC will be forced to take steps to protect its interests in the near future if Kensington fails to address these very serious situations which obviously impair EFC's position.

Finally, I note that your letter seeks to have this borrower considered for a modification. Emigrant has a residential loan modification policy but this policy would not apply to this commercial loan. Moreover, the situations described herein very strongly suggest that it would not be in EFC's interests to consider a modification of this obligation at this time for a borrower that has been unresponsive, uncooperative, and has failed to maintain the collateral correctly.

I trust that this letter fully addresses the concerns raised in your letter. Emigrant regrets that it is not in a position to take some of the steps requested by you. The proposal offered in the May 22, 2009 letter, however, will remain available to Kensington until December 21,

2009. At that time, EFC will have no choice but to pursue any and all remedies available to it. No portion of this letter shall constitute a waiver of any of EFC's rights and remedies under the loan documents executed in connection with the referenced loan. EFC expressly reserves such rights and remedies with regard to any and all matters addressed herein, as well as any other Events of Default that have already occurred or will occur in the futre which have not been expressly mentioned herein.

Very truly yours,

James A. Raborn

JAR/vs



Emigrant Mortgage Company
5 East 42nd Street
New York, New York 10017

FILIPPO RUGGIERO
Vice President
(212) 850-4727

May 22, 2009

<u>*Via Certified And Regular Mail*</u>

Kensington Realty Group Corp.
c/o Victoria Stennett-Bailey
1454 Flatbush Ave
Brooklyn, NY 11210-2329

Re: Mortgage Loan No.: ▆▆▆▆
Mortgage Premises: 109 Amersfort Pl., Brooklyn, NY
2408 Clarendon Rd., Brooklyn, NY

Dear Ms. Stennett-Bailey:

Section 9 of the Mortgage and Security Agreement (the "Mortgage") executed by you requires you to "promptly comply with all laws, orders and ordinances affecting the Mortgaged Property or the use thereof." Under Section 21(d) of the Mortgage, the failure to comply with Section 9 of the Mortgage constitutes an Event of Default under the Mortgage making the entire amount due under the Mortgage immediately due and payable. Further, Section 22 entitles Emigrant Funding Corporation (EFC) to charge the default rate of interest of 24% per annum upon the occurrence of any Event of Default.

As you know, at the time that the referenced loan was made, there were a number of HPD violations impacting 2408 Clarendon Avenue, Brooklyn, New York. EFC has since learned that this property is the subject of an increased number of HPD violations and the property has been placed in the HPD's Alternative Enforcement Program. This constitutes a breach of Section 9 of the Mortgage. Within fourteen (14) days from the date of this letter, please provide EFC with a full and complete explanation of your compliance with the HPD's Alternative Enforcement Program and your current efforts to cure the more than 300 HPD violations existing at 2408 Clarendon Avenue, Brooklyn, NY.

Section 4 of the Mortgage also requires you to "keep the Mortgaged Property insured against loss or damage by fire, flood, and such other hazards, risks and matters, including, without limitation, business interruption, rental loss, public liability, and boiler damage and liability." EFC has been informed that you are not currently complying with this requirement. This constitutes an additional default under the terms of your mortgage.

EFC is also aware that a fire has occurred at the second property securing the referenced loan, 109 Amersfort Place, Brooklyn, New York. It is EFC's current understanding that this property is currently not habitable but that insurance proceeds of about $193,000 (with a possible additional betterment payment of about $38,000 due upon completion of repairs) will be received in connection with the insurance claim filed by Emigrant Mortgage Company on behalf of EFC. Section 4(b) of the Mortgage permits EFC to apply the proceeds of this insurance claim against the amounts


due and owing under the Mortgage. EFC, however, is willing to consider allowing the use of these funds towards the restoration of this property to its original condition; however, you will be required to execute a Property Restoration Agreement with EFC.

Among other things, any Property Restoration Agreement shall allow EFC to hold and disburse the insurance proceeds as work is completed to restore the subject property, and provide for regular inspections of the subject property by EFC to monitor the status of the restoration work. The Property Restoration Agreement shall also entitle EFC to withhold and disburse insurance proceeds towards all of EFC's fees and costs associated with the preparation and monitoring of the Property Restoration Agreement. EFC's fees and costs may include, but are not limited to, inspection fees ($250.00 per occurrence), administrative fees ($250.00 per release), and legal fees of $1,500.00 for drafting and entering into the agreement.

Finally, given all the issues addressed herein, EFC will require you to pledge additional collateral to secure the obligations that exist under this loan. EFC proposes that the additional collateral would be 1432 and 1454 Flatbush Avenue, Brooklyn, New York. The costs of placing a mortgage on 1432 and 1454 Flatbush Avenue, Brooklyn, New York, including but not limited to attorney fees, mortgage taxes and recording fees, shall be disbursed from the insurance proceeds.

Upon compliance with the terms and conditions of the Property Restoration Agreement, and provided that the loan is current and that no other defaults exist under the loan documents, EFC would release the lien of its mortgage on this additional collateral provided that (1) EFC receives satisfactory proof of insurance as required by EFC at the time of origination of this loan, and (2) receipt of satisfactory proof that all outstanding violations on the mortgaged properties have been cured, including providing proof that all outstanding fines, assessments or other charges associated with said violations have been paid.

If you wish to pursue this option, you should immediately notify EFC so that an appropriate agreement and other documentation can be drafted. Otherwise, EFC will exercise its right under the Mortgage to apply the proceeds of the insurance claim to the referenced loan.

Please be advised that this letter shall not constitute a waiver of any of EFC's rights and remedies under the Loan Documents executed by you. EFC expressly reserves such rights and remedies with regard to any and all items referred to herein, as well as any other Events of Default that have already occurred or will occur in the future which have not been expressly mentioned herein.

Please advise as to how you would like to proceed.

Very truly yours,

Emigrant Mortgage Company, Inc.
As servicer for
Emigrant Funding Corporation

By:



| KATHY HOCHUL | ADRIENNE A. HARRIS |
|---|---|
| Governor | Superintendent |

October 11, 2022

Victoria Stennett
1454 Flatbush Avenue
Brooklyn, NY 11210

Re: Case Number: BKM-2022-01491706 (Kensington Realty Group Corp.)

Dear Victoria Stennett:

The New York State Department of Financial Services (DFS) has received your Request for Assistance. Based on our review, it appears that the issue(s) you raised falls outside of DFS jurisdiction.

In this regard, please be informed that DFS regulates only those mortgages involving residential properties (1-4 family owner occupied) located in New York State, which does not cover investment properties.

Additionally, if this matter either has been, or currently is the subject of court action, DFS will be unable to resolve this matter. The DFS Mortgage Assistance Unit attempts to bring disputing parties together to resolve their disagreements. However, courts are in a much better position to receive evidence, take testimony under oath and make determinations about whether the parties before them have complied with the law and fulfilled their contractual obligations. Moreover, DFS must defer to any decision made by the court reviewing this matter as we do not have the authority to overrule a court.

You may consider contacting the following federal regulatory agency with your concerns:

FDIC: Information and Support Center - Home
**FDIC Contact Center**
**1-877-275-3342 (1-877-ASKFDIC)**
8:00 am - 6:00 pm ET; Monday-Friday
8:00 am - 1:00 pm ET; Saturday
Closed Sunday
(Excluding Federal Holidays)
**For the Hearing Impaired** - Toll Free 1-800-877-8339

Please feel free to contact me at 212-709-1668 should you have any questions. In the event I am away from my desk when you call, please leave a message with your name and telephone number and refer to the file number listed above.

We regret that we were unable to be of more assistance to you and wish you the best of luck. Thank you.

THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES
• **EQUITABLE** • **INNOVATIVE** • **COLLABORATIVE** • **TRANSPARENT**
One Commerce Plaza, Albany NY 12257 | One State Street Plaza, New York NY 10004

J. Tiwary-Singh
Financial Services Examiner 3
Mortgage Assistance Unit
Mortgage Banking Division
Jemima.Tiwary-Singh@dfs.ny.gov

Sent by email to: stennettvictoria@gmail.com

THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES

• **EQUITABLE** • **INNOVATIVE** • **COLLABORATIVE** • **TRANSPARENT**
One Commerce Plaza, Albany NY 12257 | One State Street Plaza, New York NY 10004



6 EAST 43RD STREET · 10TH FLOOR
NEW YORK, NY 10017
TEL: (212) 850-4880
FAX: (212) 850-4745

February 1, 2022

<u>Via DFS Web Portal</u>
Elizabeth Diamond
New York State Department of Financial Services
Mortgage Assistance Unit
Mortgage Banking Division
One State Street Plaza
New York, NY 10004

      Re:    Case Number BKM-2022-01447802 (Victoria Stennett)
                 Borrower: Kensington Realty Group. ("Kensington")
                 Secured Properties: 109 Amersfort Place, Brooklyn, NY  ("Amersfort Property") &
                                         2408 Calrendon Road, Brooklyn, NY  ("Clarendon Property")

Dear Ms. Diamond:

Please accept this letter in response to the referenced complaint filed by Ms. Victoria Stennett.

Ms. Stennett is the President and sole shareholder of Kensington. Ms. Stennett applied for, and received, a <u>commercial loan</u> in the sum of $950,000 from Emigrant Funding Corp. ("Emigrant") where Kensington was the borrower/mortgagor and Ms. Stennett was the guarantor. The loan was secured by the two referenced properties, one of which consists of 16 apartment units. The commercial mortgage loan is due for the November 2010 payment and foreclosure proceedings have been pending since 2011.

The two properties which secure Emigrant's loan are currently valued at less than $2 million; however, as a result of over a decade of contested litigation, Emigrant is owed over $3 million, which includes over <u>$870,000 in out of pocket advances</u> for property taxes, hazard insurance, water/sewer liens, property maintenance, etc.

Ms. Stennett has been asserting unfounded accusations against Emigrant since 2009. For your reference, attached as Exhibit A are several letters issued by Emigrant in response to regulatory complaints, including a 2014 complaint filed by Ms. Stennett with the DFS.

Ms. Stennett has also interposed claims and defenses within Emigrant's foreclosure action and they have all been adjudicated in Emigrant's favor. In fact, the court determined that hazard insurance proceeds should be applied towards the loan's principal balance (see Exhibit B) and that Ms. Stennett's claims and defenses have no merit. Attached as Exhibit C is an Appellate Division Decision and Order affirming the Supreme Court's Summary Judgment Order. At this time, Emigrant's motion for a Judgment of Foreclosure and Sale is pending with the court.

The below facts evidence that Ms. Stennett's allegations are baseless:
- The Amersfort Property was covered by an Allstate hazard insurance policy ("Allstate Policy") for the period of February 2008 through February 2009.

- In June of 2008, Ms. Stennett allowed the Allstate Policy to lapse due to non-payment.
- On October 28, 2008, Emigrant was advised that the day before, the Amersfort Property had been damaged in a fire.
- Emigrant contacted Allstate about the damage and learned that the Allstate Policy was terminated as of June 20, 2008 for non-payment (See Exhibit D).
- Due to the terms of Emigrant's forced place insurance contract, Emigrant was able to obtain a retroactive insurance policy which covered the damage.
- Ms. Stennett has spent over a decade claiming that she had hazard insurance to cover the Amersfort Property when Emigrant obtained its forced place policy even though she knows this is not true. Attached as Exhibit E is a December 26, 2018 Appellate Division Decision and Order affirming the lower court's Summary Judgment Order and finding that Allstate did not have to cover the Amersfort Property fire damage because it properly terminated the Allstate Policy in June of 2008 for nonpayment. Notably, the court pointed to <u>multiple contradictions</u> between Ms. Stennett's sworn statements as compared to her admissions and the evidence presented.
- Furthermore, while Ms. Stennett complains that Emigrant obtained forced place insurance coverage for the Amersfort Property, she conveniently fails to acknowledge that otherwise, there would be no coverage for the fire damage. Instead, Emigrant's forced place policy resulted in the receipt of insurance proceeds exceeding $193,000 which, as noted below, was used to pay down the loan's principal balance.
- Soon after the Amertsfort Property fire, in 2009, Emigrant learned that the Clarendon Property, a four story apartment building with 16 apartment units, had more than 300 HPD violations and was placed in the HPD's Alternative Enforcement Program. Emigrant tried to communicate with Ms. Stennett regarding the violations but received no response (see Exhibit A).
- When Ms. Stennett stopped making loan payments in 2010, the loan was referred to foreclosure.
- Ms. Stennett interposed an Answer within the foreclosure action which included 11 affirmative defenses and 7 counterclaims, including but not limited to, allegations related to the insurance proceeds. A copy of the Answer is attached as Exhibit F.
- The courts considered, and dismissed, all of Ms. Stennett's claims and granted Emigrant summary judgment (see Exhibit C).
- Regarding the issue of what should be done with the insurance proceeds, the court determined that such proceeds should be applied towards the principal balance of the loan (see Exhibit B).
- Emigrant applied the insurance proceeds towards the principal balance of the loan as of the date such proceeds were received. Accordingly, the loan stopped accruing interest for this amount.
- The court also appointed a Receiver (including successor Receivers, collectively the "Receiver") for the Clarendon Property and since 2014, the Receiver has been addressing the hundreds of HPD violations. Despite receipt of rental income, <u>Emigrant has paid over $160,000</u> in connection with property maintenance issues and the receivership appointment, including to help resolve the HPD violations. When the foreclosure is concluded and the Receiver is discharged, he will have to provide an accounting, at which time the court will decide whether to apply any funds on hand to reduce the amount due to Emigrant.

Based on the foregoing, and since the claims interposed by Ms. Stennett have been adjudicated by the courts, we respectfully request that Ms. Stennett's complaint against Emigrant be dismissed in its entirety.

                                        Very truly yours,

                                        Zhanna Kandel
                                        First Vice President & Director of Foreclosure

Cc: Ms. Victoria Stennett
    109 Amersfort Place
    Brooklyn, NY 11226