| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | RETURN DATE: 2/13/23 |
| EASTERN DISTRICT OF NEW YORK | TIME: 12:00 NOON |

-----------------------------------------------------------------X

In re:

KENSINGTON REALTY GROUP CORP.,   CASE NO: 22-42817-ESS
                                 CHAPTER 11
                      Debtor.

-----------------------------------------------------------------X

# NOTICE OF MOTION FOR ORDER (A) DISMISSING DEBTOR'S CHAPTER 11 PROCEEDING, OR IN THE ALTERNATIVE, (B) GRANTING RELIEF FROM THE AUTOMATIC STAY

**S I R S:**

      **PLEASE TAKE NOTICE**, that upon the Application dated January 10, 2023 (the "Application"), Emigrant Funding Corporation ("Emigrant" or "Applicant"), a secured creditor of Kensington Realty Group Corp.'s ("Kensington" or the "Debtor") the above-named debtor, by its attorneys, Terenzi & Confusione, P.C., shall move before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge in the Courtroom located at the United States Bankruptcy Court for the Eastern District of New York, located at 271 Cadman Plaza East, Courtroom 3554, Brooklyn, New York 11201, on February 13, 2023 at 12:00 noon., or as soon thereafter as counsel may be heard, for entry of an order (A) pursuant to 11 U.S.C. 1112(b) dismissing this case or in the alternative, (B) pursuant to 11 U.S.C. Section 362(d), granting relief from the automatic stay, and (C) for such other and further relief as this Court deems just and proper.

1

**PLEASE TAKE FURTHER NOTICE,** that all hearings before Judge Stong will be conducted remotely, by telephone or video as the Court deems appropriate, until further notice. It is not necessary to contact the Courtroom Deputy to request prior authorization to appear remotely, whether via telephone or video. Please use eCourt Appearances to register to appear at a hearing. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and if appropriate, the party that you represent. Please be sure to register at least two business days before your hearing. You will receive instructions on how to access the remote hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time, and keep your audio and video on mute until your case is called. If you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. Alternatively, you may access eCourt Appearances at https://ecf.nyeb.uscourts.gov/cgibin/nyebAppearances.pl. Additional information about eCourt Appearances, including a tutorial on how to use the program, is available at https://www.nyeb.uscourts.gov/registeringremote-hearing-appearance-using-ecourt-appearances.

**Instructions to attend a telephonic hearing:**

1. **Dial in Number 888-808-6929**
2. **Access Code – 8523285#**
3. **State your name each time before speaking**
4. **Avoid the use of a speaker phone**
5. **If you are not speaking, keep your phone on mute**

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief herein requested shall be in writing, shall state with particularity the grounds for the objection, shall be filed with the Clerk of the Bankruptcy Court and served upon, the undersigned counsel for the Applicant by 5:00 p.m. seven days prior to the return date and upon any other person whose

interests would be affected if the objection is sustained.

Dated: Garden City, New York
       January 10, 2023

                                    **TERENZI & CONFUSIONE, P.C.**
                                    Attorneys for Emigrant Funding Corp.

                              BY:   \s\ Ronald M. Terenzi
                                    Ronald M. Terenzi, Esq.
                                    Cara M. Goldstein, Esq.
                                    401 Franklin Avenue, Suite 304
                                    Garden City, New York 11530
                                    516-812-0800
                                    rterenzi@tcpclaw.com
                                    cgoldstein@tcpclaw.com


TO:    All Creditors

| UNITED STATES BANKRUPTCY COURT | RETURN DATE: 2/13/23 |
| EASTERN DISTRICT OF NEW YORK | TIME: 12:00 NOON |

-------------------------------------------------------------X

In re:

KENSINGTON REALTY GROUP CORP.,                CASE NO: 22-42817-ESS
                                              CHAPTER 11
               Debtor.

-------------------------------------------------------------X

**APPLICATION OF EMIGRANT FUNDING CORPORATION IN SUPPORT OF ORDER (A) DISMISSING DEBTOR'S CHAPTER 11 PROCEEDING, OR IN THE ALTERNATIVE, (B) GRANTING RELIEF FROM THE AUTOMATIC STAY**

**TO:    THE HONORABLE ELIZABETH S. STONG**
        **UNITED STATES BANKRUPTCY JUDGE**

The Application of Emigrant Funding Corporation ("Emigrant" or "Applicant") by its attorneys, Terenzi & Confusione, P.C., respectfully represents and says:

**I.    RELIEF REQUESTED**

1. This is a contested matter brought pursuant to Sections 1112(b) and 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") for an Order: (A) dismissing Kensington Realty Group Corp.'s ("Kensington" or the "Debtor") Chapter 11 proceeding, or in the alternative, (B) modifying and terminating the automatic stay to permit Applicant to exercise all of its rights and remedies with respect to certain collateral consisting of the real properties located at 109 Amersfort Place, Brooklyn, New York (the "Amersfort Property") and 2408 Clarendon Road, Brooklyn, New York (the "Clarendon Property" and collectively with the Amersfort Property, the "Properties"), owned by the Debtors, as more particularly described herein and (C) granting Applicant such other and further relief as the Court deems just and proper.

2. This mortgage has been in default for over 12 years, since 2010. Since that default, interest has been accruing, together with Emigrant being responsible for out-of-pocket expenses such as taxes and insurance when the Properties did not generate sufficient income. As a result, the outstanding amount on the mortgage is now over Five Million Dollars. Given the amount of debt owing to Emigrant and the value of the Properties, Emigrant does not see that there is a realistic prospect for a successful reorganization. Even relying on the Debtor's overly optimistic value of the Properties at $2,600.000, as set forth below, there is still a deficiency of over $2,400,000. Neither is there any rationale in seeking to sell the Properties through this bankruptcy proceeding since there is no equity beyond the amounts owed to Emigrant that would provide for any distribution to unsecured creditors or to cover the administrative expenses of a sale through the bankruptcy process. Accordingly, as set forth below, Emigrant respectfully requests the dismissal of the Debtor's Chapter 11 proceeding, or in the alternative, relief from the automatic stay.

II. **BACKGROUND**

3. Emigrant is the holder of a Commercial Real Estate Mortgage Note (the "Note") dated July 20, 2006 given by the Debtor in the principal amount of $950,000.00. The Note is secured by a Commercial Mortgage given by the Debtor on the Amersfort Property and the Clarendon Property. [A copy of the Note and Mortgage has been filed as part of Emigrant's Objection to use of Cash Collateral, at Docket #23, attachment 1].

4. Pursuant to the terms of the Note, monthly payments are to be made to Emigrant. The Debtor defaulted on the November 1, 2010 payment due under the Note and on each payment due thereafter. As a result of the Debtor's default, on July 14, 2011, Emigrant commenced a

foreclosure action in the Supreme Court of the State of New York, County of Suffolk under Index No. 15896/2011 (the "State Foreclosure Action") to foreclose upon its Mortgage against the Properties.

5. By Order dated July 31, 2014, the State Court entered an Order Appointing Receiver (the "Receiver Order") in the State Foreclosure Action. [Docket #23, attachment #2]. The Receiver only manages the Clarendon Property.

6. On June 27, 2022, Emigrant obtained a Judgment of Foreclosure and Sale (the "Foreclosure Judgment'), [Docket #23, attachment #3], and an auction of the Properties was thereafter scheduled for November 10, 2022.

7. On November 10, 2022 (the "Filing Date"), the Debtor filed a petition with the Clerk of this Court under Chapter 11 of the Bankruptcy Code.

8. The Debtor is in the business of ownership and management of the two Properties. The Clarendon Property is a 16 unit residential building. The Amersfort Property is a two family home that has not been occupied for some 14 years as a result of a fire that occurred in 2008.

9. On or about November 16, 2022, the Debtor filed a cash collateral motion (the "Cash Collateral Motion") seeking, among other things, the use of cash collateral to pay the monthly mortgage and ordinary and necessary operating expenses of the Property. [Docket #23]

10. By Objection dated November 22, 2022, Emigrant opposed the Cash Collateral Motion since the debt owed to Emigrant greatly exceeds the value of the Properties and accordingly, there is clearly no equity in the Properties and the Debtor's use of cash collateral is detrimental to Emigrant. In addition, Emigrant opposed the turnover of the Clarendon Property to the Debtor since when the Debtor was managing the Properties and collecting rents, the Debtor's failure to maintain the Clarendon Property led to New York City's Department of Housing,

Preservation and Development imposing hundreds of violations, many of them classified as "C" violations constituting immediate hazards to the building's tenants.

11. Given that this mortgage has been in default for over 12 years, since 2010, with the accrual of interest and out of pocket costs paid by Emigrant, such as Real Estate Taxes, insurance and satisfaction of building code violations, Emigrant's lien is currently in excess of $5,009,023.62 while the combined value of the Properties is only $1,780,000.00 based on appraisals of the Amersfort and the Clarendon Properties conducted on January 8, 2022, [Docket #23, attachment #4 and 5 respectively]. Thus, there is a deficiency due Emigrant, above the value of the Properties, in an amount exceeding Three Million Dollars

12. A hearing was held on the Cash Collateral Motion on December 2, 2022 and the Motion was carried to January 5, 2023.

13. On January 4, 2023, the Debtor filed a pre-conference status report (the "Status Report") pursuant to which the Debtor advised that as a last resort, the Debtor is exploring the possibility of submitting a Chapter 11 plan of liquidation which would enable the Debtor to sell the Properties in an arms' length private sale as opposed to a state foreclosure auction.

14. The Debtor reiterated the same strategy at the hearing on January 5, 2023 and the Motion was adjourned to February 13, 2023.

15. Subsequent to the hearing, the Debtor provided appraisals of the Properties conducted on December 1, 2022 which valued the Properties at $400,000 for the Amersfort Property and $2,200,000 for the Clarendon Property for a combined value of $2,600,000.00. Even at the optimistic valuations supplied by Debtor, the deficiency in the amount due to Emigrant exceeds $2.4 Million Dollars

## III. THE APPLICATION

### A. DISMISSAL

16. By this Application, Applicant seeks the entry of an Order dismissing the Debtor's Chapter 11 proceeding for cause. Applicant submits that that this Court is compelled to dismiss or convert the instant bankruptcy proceeding under the mandates of Section 1112 of the Code based on the fact that; the Debtor lacks equity in the Properties; the accrual of interest and administrative expenses is creating a diminution in the value of the Estate; the Debtor's continued operation without cash collateral approval; and the inability to propose a confirmable plan.

17. Section 1112(b) of the Bankruptcy Code provides, in pertinent part, that

> on request of a party in interest, and after notice and a hearing, . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
> (4) For purposes of this subsection, the term "cause" includes –
>   (A) substantial or continuing loss or diminution of the estate and an absence of a reasonable likelihood of rehabilitation;
>   (D) unauthorized use of cash collateral substantially harmful to one or more creditors; . . .
>   (M) inability to effectuate substantial consummation of a confirmed plan;

11 U.S.C. §1112(b)(1) and (4); 11 U.S.C. §1112(b)(1) and (4); *See*, In re Scott Cable Communications, Inc., 2007 WL 2669108 (D.Conn. 2007) (Section 1112(b) directs the court to consider the bests interests of the creditors and the estate in evaluating whether to dismiss or convert and includes a non-exclusive set of factors that would provide cause for conversion or dismissal). Subsection (b)(4) contains sixteen examples of events that may constitute cause. This list, however, is "not exhaustive" and courts are free to consider other factors. *See, e.g.,* In re Ameribuild Const. Mgmt., Inc., 399 B.R. 129, 131 n. 3 (Bankr. S.D.N.Y.2009). In the instant case, cause exists for the granting of this Motion under section 1112(b)(4)(A), (D), and (M).

18. A bankruptcy court possesses broad discretion to dismiss a chapter 11 bankruptcy

case for cause under §1112(b). *See* Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC, 476 B.R. 60, 69 (E.D.N.Y. 2012); Matter of Woodbrook Associates, 19 F.3d 312, 316 (7th Cir. 1994). Further, a chapter 11 case can be dismissed at any time. Matter of Woodbrook at 317. "Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan had expired. In re Ameribuild Constr. Mgmt., 399 B.R. 129 (Bankr. S.D.N.Y. 2009). Likewise, they do not need to "incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated." Matter of Woodbrook at 317. "The very purpose of §1112(b) is to cut short this plan and confirmation process where it is pointless." Matter of Woodbrook at 317.

19. Under § 1189(a), only the debtor may file a plan in a subchapter V case; neither the subchapter V trustee nor creditors are permitted to do so. The deadline to file a plan in a subchapter V case is governed by § 1189(b). However, dismissal of a Chapter 11 case is also appropriate where the court finds that a feasible plan is not possible. In re 3 Ram, Inc., 343 B.R. 113 (Bankr. E.D.Pa. 2006). If a chapter 11 debtor cannot achieve a reorganization within the statutory requirements of the Bankruptcy Code, then there is no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy law rights. Id. at 118; *see also* In re Lizeric Realty Corp., 188 B.R. at 503 ("Under § 1112(b)(2) of the Code, the court may 'dismiss or convert a case if [it] determines that it is unreasonable to expect that a plan can be confirmed in a chapter 11 case.'") (*citing* 5 COLLIER ON BANKRUPTCY 1112.03[ii] at 1112-20). Inability to effectuate a plan arises when the "debtor lacks the ability to formulate a plan or to carry one out." In re AdBrite, 290 B.R. at 216 (*citing* In re Dark Horse Tavern, 189 B.R. 576, 582 (N.D.N.Y. 1995)); *see also* Hall v. Vance, 887 F.2d 1041, 1044 (10th Cir. 1989) (explaining that an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out); In re Acme Holding Co., 2015 Bankr. LEXIS 2417, at *34

6

(Bankr. W.D. Ark. July 22, 2015). In other words, if it is impossible to confirm a plan under section 1129 of the Bankruptcy Code, a debtor's case should be converted. *See, e.g.,* In re Babayoff, 445 B.R. 64, 77 (Bankr. E.D.N.Y. 2011); In re Local Union 722 Int'l Bhd. of Teamsters, 414 B.R. 443, 453 (Bankr. N.D. Ill. 2009); *see also* In re Woodbrook Assocs., 19 F.3d 312, 317 (7th Cir. 1994) ("The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless.").

20. At the outset, this case was filed as a Chapter 11 Subchapter V proceeding. Accordingly, a plan is due to be filed by the Debtor within 90- days of filing, which would be February 8, 2023, prior to the return date of this Motion. Thus, regardless of whether a plan is actually filed by the Debtor by the deadline, given the amount of debt owing to Emigrant by the Debtor and the value of the Properties, Emigrant submits that there is no realistic prospect for a confirmable plan or a successful reorganization.

21. Emigrant has a current lien on the Properties in excess of $5,009,023.62. Even given the Debtor's overly optimistic assessment of the values of the Properties at $2,600,000 for argument purposes only, Emigrant's lien far exceeds the value of the Properties by over $2,400,000. As a result, in any proposed plan, Emigrant would have an overwhelming unsecured claim and would therefore control the class. Thus, it would be impossible for the Debtor to confirm a plan over Emigrant's objection.

22. In addition, while it appears that rents are being collected on the Clarendon Property, it is apparent that any such rents are insufficient to pay current mortgage obligations, taxes, insurance, and all the outstanding arrears, much less have income available to fund a plan of reorganization. Accordingly, Emigrant is not adequately protected and there is no reasonable likelihood that the Debtor can rehabilitate while the value of the estate continues to diminish.

23. Moreover, cause exists since the value of the estate continues to deteriorate based on the daily accumulation of interest owed to Applicant, as well as the accrual of post-petition liability resulting from the inability of the Debtor to meet their post-petition obligations as they come due.

24. The Debtor has, through its filing of its pre-conference report filed on January 1, 2023 [Docket #37], asserted that it is negotiating with Emigrant regarding a possible resolution. However, the fact is, despite good faith and cooperation among counsel for the parties, there is no settlement in prospect. The Debtor's report also references the possibility of filing a plan of liquidation. However, there is no justification stated, nor could there be, as to how or why this would be a benefit to any party. Given the debt to value ratio here, even on the most optimistic valuation there is a deficiency of over $2.4 Million. Consequently, there are no funds available for unsecured creditors or for the administrative costs associated with a sale through the bankruptcy process. It has been the undersigned's experience that neither the Bankruptcy Court nor the U. S Trustee would sanction a sale in a bankruptcy proceeding that was unable to pay something to the unsecured creditors, no less be unable to fund the administrative costs. Thus, there is no rationale justification for a liquidation plan.

25. Based on the foregoing, the dismissal is warranted under Section 1112(b) (4)(A) due to a substantial or continuing loss or diminution of the estate and an absence of a reasonable likelihood of rehabilitation inability, and (M) due to the inability of Debtor to effectuate substantial consummation of a confirmed plan. Consequently, Applicant respectfully, requests that the Court dismiss the Debtors' bankruptcy proceeding in its entirety.

## B. RELIEF FROM STAY

26. In the alternative, if this Court denies Emigrant's request for dismissal, then Emigrant respectfully requests that this Court enter an Order modifying and terminating the automatic stay to permit Emigrant to exercise all of its rights and remedies with respect to the Properties.

27. Bankruptcy Code Section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stayC
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . ..

28. Section 362(d) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay for cause. In granting bankruptcy courts broad discretion in deciding whether to grant relief from the automatic stay, Congress recognized that, in some instances, it may be appropriate to grant relief from the stay in order to allow a creditor to proceed with state court litigation against the debtor. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-344 (1977). The decision of whether to modify the automatic stay in such a case is committed to the discretion of the bankruptcy judge. *See* In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990).

29. In Sonnax, the Second Circuit set forth 12 factors to be considered in deciding whether the stay should be lifted to allow litigation to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

Id. at 1286, *citing* In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984). The court need not consider all of these factors in making its determination; it may consider whichever ones it deems appropriate, without necessarily giving equal weight to each factor it considers. Id; *see also* In re Montague Pipeline Technologies Corp., 209 B.R. 295 (Bankr. E.D.N.Y. 1997). Another factor the court may look to is whether the stay is being used to shield misconduct by the debtor. Id. at 770.

30. Applying the Sonnax factors to the case at bar, it is clear that the stay must be vacated. First, relief from the stay would certainly result in a complete resolution of the issues since Emigrant can proceed with a foreclosure sale of the Properties in accordance with the Judgement of Foreclosure and Sale. In addition, litigation of this matter in another forum would not prejudice the interest of other creditors, especially since according to the Debtor's schedules there only appear to be three unsecured creditors. Moreover, any judgment claim arising from the litigation would not be subject to equitable subordination in the bankruptcy and would not result in a judicial lien avoidable by the Debtor. Thus, based on the factors set forth in Sonnax, the Court must grant the relief requested by Emigrant.

31. Furthermore, it is respectfully submitted that the facts of the within proceeding dictate that the stay must be vacated under Section 362(d)(2) of the Bankruptcy Code since, as set forth in detail above, the Debtor maintains no equity in the Properties, and as described above

cannot confirm a plan. Additionally, as discussed above, Applicant is not adequately protected since they are undersecured and are receiving no payments and there is insufficient income to generate adequate protection payments. Moreover, any proposal by the Debtor to pay the monthly debt service on the contractual amount based on the original outstanding balance of $950,000 is clearly insufficient given that the current debt exceeds Five Million Dollars. Therefore, the stay must be lifted pursuant to Section 362(d)(1) of the Bankruptcy Code as a continuation of the automatic stay will prejudice Emigrant.

32. Notably, the Debtor continues to disparage Emigrant without justification, by among other things, displaying a banner on the Amersfort Property which states that "Emigrant Bank Destroys Black Lives". Such tactics are unacceptable and should be addressed by the Court.

33. Additionally, relief is warranted under section 362(d) since the debtor has no equity in the Properties and they are not necessary for a reorganization since no confirmable plan is feasible as detailed above.

34. Since no novel or complex issues of law are raised by the instant Motion other than as set forth above, Emigrant requests that any requirement for a separate memorandum of law be waived.

35. Due to Applicant's ongoing economic harm, Applicant respectfully requests that the fourteen-day stay of the instant order pursuant to Federal Rule of Bankruptcy Procedure 4001(a) (3) be waived.

36. No prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** it is respectfully requested that the Court enter an Order: (i) dismissing the Debtor's Chapter 11 proceeding, or in the alternative, (ii) modifying and

terminating the automatic stay to permit Applicant to exercise all of its rights and remedies with respect to the Property; and (iv) granting Applicant such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
      January 10, 2023

                                **TERENZI & CONFUSIONE, P.C.**
                                Attorneys for Emigrant Funding Corp.

                  BY:   \s\ Ronald M. Terenzi
                            Ronald M. Terenzi, Esq.
                            Cara M. Goldstein, Esq.
                            401 Franklin Avenue, Suite 304
                            Garden City, New York 11530
                            516-812-0800
                            rterenzi@tcpclaw.com
                            cgoldstein@tcpclaw.com