BRONSTER, LLP
*Proposed Counsel for Debtor*
156 West 56th Street, Suite 902
New York, New York 10019
(347) 826-5051
J. Logan Rappaport, Esq.
lrappaport@bronsterllp.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re

    KENSINGTON REALTY GROUP CORP.,    Case No. 1-22-42817-ess

    Debtor.    Chapter 11

---------------------------------------------------------------X

## DEBTOR'S OBJECTION TO MOTION BY EMIGRANT FUNDING CORP. FOR ENTRY OF AN ORDER DISMISSING DEBTOR'S CHAPTER 11 CASE OR, ALTERNATIVELY, GRANTING RELIEF FROM THE AUTOMATIC STAY

Kensington Realty Group Corp. ("Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy proceeding, by its attorneys, Bronster LLP, submits the instant objection to the motion, filed January 12, 2023, of Emigrant Funding Corporation ("Emigrant") seeking the entry of an Order (i) dismissing Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1112(b) or, (ii) in the alternative, granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d), and respectfully represents as follows:

### BACKGROUND

1. On November 10, 2022 (the "Filing Date"), Debtor filed a voluntary petition for relief from its creditors pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Petition").

2. Since the Filing Date, Debtor has remained in possession of its assets and continues management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code with the exception that on of Debtor's real properties continues to

1

be managed by a pre-petition state court-appointed receiver.

3. No trustee (except as set forth below), examiner or statutory committee has been appointed in Debtor's case.

4. On November 14, 2022, the United States Trustee appointed Charles N. Persing, CPA as Subchapter V Trustee (the "Trustee").

5. Debtor is in the business of ownership and management of two properties, which are located at 109 Amersfort Place, Brooklyn, New York (the "Amersfort Property") and 2408 Clarendon Road, Brooklyn, New York (the "Clarendon Property," and together with the Amersfort Property, the "Properties"), The Clarendon Property is a 16-unit residential building that consists of 14 2BR units and two 1BR units. The Amersfort Property is a two family home, however it is currently not occupied on account of a fire that occurred in 2008, which resulted in considerable damage.

6. Only the Clarendon Property is presently occupied and generating income, however Lawrence Price of Corme Accounting, Tax, and Fiduciary Consultants LLC (the "Receiver"), the state court appointed receiver as to the Properties, is receiving the rental proceeds generated therefrom. The Receiver's management of the Clarendon Property and exercise of control over the rental proceeds are subject to Debtor's pending motion seeking turnover.

**A.  Emigrant's Claim**

7. Emigrant is the holder of a Commercial Real Estate Mortgage Note (the "Note"), dated July 20, 2006 in the principal sum of $950,000.00. The Note is secured by a mortgage ("Mortgage") against the two Properties.

8. Debtor previously defaulted on the Note and Mortgage and, consequently, on or

about July 14, 2011, Emigrant commenced an action to foreclose upon its Mortgage against the Properties in the Supreme Court of the State of New York, Kings County (the "Foreclosure Action").

9. On June 27, 2022, the state court issued a Judgment of Foreclosure and Sale (the "Foreclosure Judgment") in favor of Emigrant and against Debtor in connection with the foreclosure of the Mortgage against the Properties. A sale was thereafter scheduled but was stayed by virtue of the commencement of this Chapter 11 proceeding.

10. On or about December 13, 2022, Emigrant filed a proof of claim asserting a secured claim in the sum of $5,009,023.62 with respect to the Note and Mortgage. (See Claim No. 3-1).

B. **The Other Claims against the Estate**

11. In addition to the Emigrant claim, the following claims have been filed in this case: (i) an unsecured claim in the amount of $3,859.60, of which $3,360.50 is entitled to priority, in favor of the New York State Department of Taxation and Finance, (ii) an unsecured claims in the amount of $3,939.15, of which $300.00 is entitled to priority, in favor of the Internal Revenue Service, (iii) an unsecured claim in favor of Tarik Davis in the sum of $39,785.83, and, (iv) an unsecured claim in favor of Jennings & Jennings Fuel Oil Co., Inc. in the sum of $5,925.93 (collectively, the "Unsecured Claims").

12. Additionally, Debtor has incurred administrative expense claims owed to the Trustee and Bronster, LLP as proposed general counsel in undetermined amounts (collectively, the "Administrative Claims").

C. **The Values of the Properties**

13. Pursuant to appraisals annexed to its objection, filed on November 22, 2022 (Dkt.

# 23), to Debtor's motion for authorization to use cash collateral, Emigrant asserts that the Clarendon Property has a fair market value of $1,250,000.00 and the Amersfort Property has a fair market value of only $530,000.00. As such, Emigrant submits that the most the Properties would sell for after being properly marketed is a combined $1,780,000.00.

14. In contrast, Debtor obtained its own appraisals which establish that the Properties have a much higher combined fair market value than Emigrant suggests. Pursuant to an appraisal, dated December 1, 2022, the Clarendon Property has a fair market value of $2.2 million. Pursuant to an appraisal, dated December 1, 2022, the Amersfort Property has a fair market value of not less than $400,000.00 "as is", but a value of $1,075,000.00 if repaired. As such, the combined fair market value of the Properties is actually not less than $2.6 million, over $2.7 million if Emigrant's appraisal of the Amersfort Property proves more accurate. (True and correct copies of Debtor's appraisals for the Clarendon Property and Amersfort Property are annexed hereto as **Exhibits "A"** and **"B,"** respectively.)

15. Typically, a state-court foreclosure auction results in a dramatically lower sale price than that which would be generated from a deliberate marketing effort. Therefore, in the event of dismissal or stay relief, Emigrant can be expected to recover far less than even Emigrant's lower estimated fair market value of the Properties of $1,780,000.00 while Debtor's other creditors would recover absolutely nothing from an auction sale.

**D. The Motion**

16. By its Motion, Emigrant primarily seeks the dismissal of Debtor's Chapter 11 case pursuant to Section 1112(b) of the Bankruptcy Code. The gravamen of Emigrant's argument is that Debtor lacks equity in the Properties, Debtor is operating without authorization to use cash collateral, and Debtor is unable to propose a confirmable Chapter 11 plan. In the

event the case is not dismissed, Emigrant seeks relief from the automatic stay pursuant to Section 362(d)(1) so as to proceed with the auction sale of the Properties pursuant to the Foreclosure Judgment.

## OBJECTION

### A. Dismissal of the Chapter 11 Case is Unwarranted

17. Debtor objects to the request for the dismissal of this case since a liquidating Chapter 11 plan, which Debtor will submit to the Court no later than February 8, 2023, will better achieve the goal of maximizing the payment to Emigrant on its Note and Mortgage by way of well-marketed, arms' length sale through the efforts of Debtor's principal, Victoria Stennett, who is a licensed real estate broker with over 36 years' experience in the Properties' market, which would avoid the additional administrative expenses that would otherwise be incurred through the use of a broker. Moreover, by the anticipated liquidating plan, Ms. Stennett will personally contribute an additional $30,000.00 for the payment of Administrative Claims and the Unsecured Claims. In a dismissal or a foreclosure sale of the Properties, the Administrative Claims and Unsecured Claims would go unpaid.

18. Section 1112 of the Bankruptcy Code authorizes dismissal of a Chapter 11 case "when it is in the best interest of the creditors and the estate to do so." *In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 600 (Bankr. S.D.N.Y. 2018). Section 1112(b)(4) sets forth a list of non-exhaustive factors which would constitute "cause" to dismiss a Chapter 11 case. The Bankruptcy Code's principal objective with respect to a Chapter 11 case is to "preserv[e] going concerns and maximiz[e] property available to satisfy creditors . . . and [to] achiever fundamental fairness and justice." *Id*. (quoting *In re Am. Capital Equip., LLC*, 688 F.3d 145, 157 (3d Cir. 2012)).

19. The movant bears the burden of establishing "cause" on a motion to dismiss pursuant to Section 1112(b) of the Bankruptcy Code, which is met upon a preponderance of the evidence. *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011). However, even if this burden is met by Emigrant, the Court need not dismiss or convert Debtor's case if it is determined "that unusual circumstances exist so that these remedies are not in the best interests of creditors and the estate." *Id*. Bankruptcy courts have "broad discretion to determine whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate." *Andover Covered Bridge, LLC*, 553 B.R. 162, 172 (1st Cir. B.A.P. 2016).

20. "While reorganization is an appropriate use of Chapter 11, the Bankruptcy Code also authorizes liquidating plans pursuant to § 1123(b)(4) . . . [and] [a]s courts in this circuit have recognized, "reorganization encompasses rehabilitation, and may include liquidation.""" *In re East End Development, LLC*, 491 B.R. 633, 642 (Bankr. E.D.N.Y. 2013).

21. Emigrant first argues that dismissal is warranted because Debtor has no equity in the Properties. Debtor does not dispute this. While it is true that Emigrant is substantially undersecured with a potential deficiency of approximately $2.3 million, the dismissal of Debtor's case or the granting of stay relief does not resolve such problem. Rather, it will only exacerbate it as Emigrant will likely obtain substantially less for the Properties at an auction on the courthouse steps. It is quite possible that the Properties only fetch approximately $1 million combined at an auction sale as opposed to a well-marketed sale pursuant to a Chapter 11 liquidating plan. Such an occurrence would leave Emigrant with a deficiency of over $4 million, a considerable increase from the $2.3 million which may result from a sale pursuant to a plan. Moreover, dismissal would leave the Unsecured Claims and Administrative Claims unpaid. As such, dismissal benefits no party in interest, not even Emigrant. As such, even if the Court determines

that "cause" exists to dismiss Debtor's case, Debtor submits that a sale pursuant to a plan of liquidation is in the best interest of the Estate and all creditors thereof.

22. Emigrant next argues that dismissal is warranted for cause pursuant to Section 1112(d)(4) because the accrual of interest and administrative expenses has resulted in the diminution of the value of the Estate. Section 1112(d)(4) requires a two-part analysis: (i) whether there is a "substantial or continuing loss to or diminution of the estate" and (ii) the absence of a reasonable likelihood of rehabilitation. Both factors must be satisfied to constitute "cause" for dismissal. *In re BH S & B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010). Here, Emigrant cannot establish both grounds. First, there is not a substantial or continuing loss too or diminution of the estate. The Receiver continues to receive rental proceeds above the present expenses of the Properties. Moreover, Debtor's insurance premiums are being paid by Debtor's principal thus relieving Debtor of such expense. As the Properties are already severely underwater, the value of the Estate is not diminished, the only thing that may be rising on account of interest under the Note and Mortgage is the amount of Emigrant's deficiency. Moreover, a sale of the Properties after a reasonable marketing period rather than at a state court auction on the courthouse steps will likely enable Emigrant to recover far more on its secured claim than if the case is dismissed. The administrative expenses of the Trustee and counsel also will be poorly served by dismissal as they stand to be paid nothing at all in such event while the liquidating plan offers $30,000.00 to be shared among them with the balance to the Unsecured Creditors. Second, there is a reasonable likelihood of rehabilitation by virtue of the anticipated liquidating plan. Although some courts disagree, courts in this district have held that the term "rehabilitation" includes a liquidating plan. *In re East End Development, LLC*, 491 B.R. 633, 642 (Bankr. E.D.N.Y. 2013).

23. Emigrant's third argument in favor of dismissal, that Debtor is operating without authorization to use cash collateral, is of no moment because Debtor is not using any of Emigrant's or any other interested party's cash collateral. Rather, Emigrant's cash collateral has been, and will continue to be, received and preserved by the Receiver. Moreover, the Receiver is currently managing the Properties and maintaining the Properties for Emigrant's benefit. As such, Emigrant's security interest in the Properties and its cash collateral, *i.e.* the rental proceeds, are being preserved and protected such that the continued prosecution of this Chapter 11 case does not prejudice its rights and interests with respect thereto.

24. Finally, Emigrant argues that Debtor cannot propose a confirmable plan. The deadline by which Debtor has to propose a Chapter 11 plan has not passed. As set forth above, Debtor anticipates filing a plan of liquidation that would include the marketing and sale of both Properties, which would likely result in a greater recovery by Emigrant, and Debtor's principal, Victoria Stennett, paying $30,000.00 in order to pay Administrative Claims and enable some distribution on the Unsecured Claims. Debtor believes it is premature to assess the merits of such a plan before it has even been filed and evaluated by parties-in-interest, including Emigrant. Debtor submits that it will be able to confirm a Chapter 11 liquidating plan.

25. By virtue of the foregoing, there is no cause for the dismissal of Debtor's case and, even in the event such cause is found, unusual circumstances exist in the present case such that dismissal would not be in the best interests of the Estate and creditors thereof. Consequently, that portion of the Motion seeking dismissal should be denied.

**B. Relief from the Automatic Stay is Unwarranted**

26. Alternatively, the Motion seeks relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code. This provision of the Bankruptcy Code provides that, upon

request by a party-in-interest, the court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." Once a prima facie showing of cause has been made by a creditor seeking stay relief, the burden of proof as to whether the automatic stay shall continue falls upon the debtor. *See* Section 362(g)(2) of Bankruptcy Code.

27. The Second Circuit Court of Appeals has adopted a list of twelve factors (the "*Sonnax* Factors") to determine whether cause exists under Section 362(d)(1) to modify the automatic stay so as to allow creditor to continue an action in state court. *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990). These factors are as follows:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*, at 1286.

28. The majority of *Sonnax* Factors either weigh against according Emigrant stay relief in this case or are neutral/inapplicable. To wit: (i) relief would not resolve any issues other than the sale of the Properties and a recovery by Emigrant, which could be achieved in the bankruptcy case pursuant to a liquidating plan; (ii) returning to the Foreclosure Action would interfere with this bankruptcy case and a deliberately marketed sale pursuant to a liquidating plan; (iii) the Foreclosure Action does not involve Debtor as a fiduciary; (iv) while the state court

9

has expertise to handle foreclosure matters, a Foreclosure Judgment has already been entered prior to the Filing Date and, as such, the only matter left for the state court to oversee is the sale of the Properties, which this Court is just as competent to oversee; (v) inapplicable; (vi) the Foreclosure Action primarily involves Debtor and Emigrant; (vii) stay relief would prejudice creditors holding Administrative Claims and Unsecured Claims in this case; (viii) there is already a judgment in the Foreclosure Action; (ix) negative; (x) this factor is inapplicable as the litigation in the Foreclosure Action has already been resolved; (xi) inapplicable; (xii) the balance of the harms weigh in favor of denying stay relief as, despite the stay, Emigrant's collateral, the Properties and the rental proceeds, are being managed and preserved by the Receiver and denying stay relief makes it more likely that Emigrant recovers a greater amount on its claim against the Estate than if stay relief is granted and if stay relief is granted then no other creditors will receive a distribution of any kind.

29. By virtue of the foregoing, stay relief pursuant to Section 362(d)(1) is inappropriate at this time and that branch of the Motion should therefore be denied.

30. Finally, to the extent Emigrant also seeks relief from the automatic stay pursuant to Section 362(d)(2), such relief should not be granted as the Properties are necessary for an effective rehabilitation by way of a liquidating plan.

31. For the reasons set forth above, the Motion should be denied in its entirety.

Dated: February 6, 2023
New York, New York

BRONSTER LLP
*Proposed Attorneys for Debtor*

By: _s//J. Logan Rappaport_
J. Logan Rappaport
156 West 56th Street, Suite 703
New York, New York 10019
(347) 826-5051
lrappaport@bronsterllp.com