BRONSTER, LLP
*Proposed Counsel for Debtor*
156 West 56th Street, Suite 902
New York, New York 10019
(347) 826-5051
J. Logan Rappaport, Esq.
lrappaport@bronsterllp.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re

     KENSINGTON REALTY GROUP CORP.,     Case No. 1-22-42817-ess

     Debtor.     Chapter 11

-----------------------------------------------------------------X

**DEBTOR'S REPLY TO SUBCHAPTER V TRUSTEE'S LIMITED OBJECTION TO DISMISSAL OF DEBTOR'S CHAPTER 11 CASE**

**TO:    THE HONORABLE ELIZABETH S. STONG
         UNITED STATES BANKRUPTCY JUDGE:**

Kensington Realty Group Corp. ("Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case, as and for its reply to the limited objection (the "Objection"), dated March 17, 2023, to the stipulation between Debtor and Emigrant Funding Corporation ("Emigrant") regarding the settlement of Emigrant's motion to dismiss (the "Motion"), filed by Charles N. Persing, CPA (the "Trustee"), the Subchapter V Trustee in this case, respectfully sets forth and represents as follows:

**BACKGROUND**

1. On November 10, 2022 (the "Filing Date"), Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

2. Debtor is currently in possession of its assets and management of its affairs as

1

debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed in Debtor's case.

3. Debtor is in the business of ownership and management of two residential, multi-unit buildings in Brooklyn, New York located at (i) 109 Amersfort Place (the "Amersfort Property") and (ii) 2408 Clarendon Road (the "Clarendon Property," and together with the Amersfort Property, the "Properties").

4. In or about 2011, Emigrant, the mortgagee as to the Properties, commenced an action (the "Foreclosure Action") to foreclose upon its mortgage against the Properties in the Supreme Court of the State of New York, Suffolk County (the "State Court").

5. By virtue of a fire which rendered the Amersfort Property uninhabitable over a decade ago and the State Court's appointment of a receiver, Lawrence Price (the "Receiver"), on or about July 31, 2014, with respect to the Clarendon Property, Debtor did not generate income for over six years prior to the Filing Date. As such, on November 16, 2022, Debtor filed a motion seeking turnover from the Receiver of all net rental proceeds still in his possession and for authority to use cash collateral, as the rents due and owing with respect to the Clarendon Property constitutes Emigrant's collateral. Emigrant opposed this motion and once it became clear that the motion would not be approved, Debtor agreed to withdraw it.

6. According to Claim No. 3-1 filed in this case, Emigrant was owed the sum of $5,009,023.62 as of the Filing Date with respect to the mortgage against the Properties and related note. Meanwhile, the Properties are worth no more than $2.73 million. Moreover, upon information and belief, the Receiver only presently has cash on hand totaling $26,424.94 and various expenses that would reduce such sum significantly, if not lead to deficiency. Consequently, Emigrant is undersecured.

7. On January 12, 2023, Emigrant filed the Motion seeking dismissal of Debtor's case. While Debtor objected to the Motion, it ultimately became clear that Debtor lacked a viable path toward confirmation of a feasible Chapter 11 plan. As such, Debtor entered into a Stipulation (the "Stipulation") whereby the case would be dismissed and Emigrant would be allowed to proceed to consummate a foreclosure sale of the Properties. Emigrant only agreed to cap any potential deficiency claim in case the Properties sold for less than the value of the Properties as set forth in the parties' appraisals.

## **THE TRUSTEE'S FEES AND HIS OBJECTION**

8. On February 23, 2023, the Trustee filed a final application for compensation seeking approval of his fees in the sum of $9,482.50 (the "Fees").

9. The Trustee has engaged with counsel for Emigrant regarding the possible payment of his Fees from the sum in possession of the Receiver, however given the Receiver's fees and expenses and the limited amount in his possession, Emigrant recently informed the Trustee that there were no funds from which to pay the Trustee from the funds held by the Receiver.

10. All parties, including the Trustee, agree that Debtor's case should be dismissed. Moreover, the Trustee does not dispute that Debtor's case is administratively insolvent and that Debtor possesses no funds or other assets from which the Trustee's fees might be paid. Rather, by his Objection, the Trustee asks the Court to take extraordinary action. To wit, the Trustee seeks from this Court an order making dismissal contingent upon the payment of his Fees. While that request, isolated from the unique facts herein, is not unusual, what he is really demanding is that either this case remain in Chapter 11 in perpetuity despite no chance of reorganization and no prospect that Debtor generates any income or liquidates any asset from which the Fees might

be paid or that Emigrant or a non-party to this case, Debtor's principal, pay his Fees.

11. The Trustee objects that both Debtor and Emigrant's counsel have been or will be paid some or all of their fees. While the undersigned cannot speak to Emigrant's payment of its counsel, Debtor's counsel did receive a $7,500 retainer pre-petition. The Trustee notes that he also received $1,000.00 as a deposit. *Objection,* ¶ 2. As such, assuming the Trustee is correct regarding the deposit, he will also have some of his Fees paid regardless of the dismissal of Debtor's case. Moreover, Debtor's counsel has incurred fees and costs in excess of $50,000 and it appears that counsel will also not recover all or even most of its own fees and expenses. Unfortunately, this is the cost of doing business in the bankruptcy world. Occasionally, a case becomes administratively insolvent and either is dismissed or converts to Chapter 7 with professionals, including counsel and trustees and accountants, not receiving payment in full of their allowed fees and expenses. While the undersigned is indeed sympathetic with the Trustee's position and is feeling similar pain, what the Trustee is seeking simply has no basis in law.

12. The Trustee appears to be requesting that the Court direct Emigrant or Victoria Stennett, Debtor's principal, to pay the balance of his Fees after application of the deposit. Debtor is agnostic on the request that Emigrant pay such balance, although the undersigned is unaware of any provision of the Bankruptcy Code or case law requiring a secured creditor to pay the administrative expenses of a Subchapter V trustee.

13. Debtor strenuously objects, however, to the Trustee's suggestion that Ms. Stennett pay the balance of his Fees. The Trustee notes that Ms. Stennett was prepared to help fund a plan by contributing $30,000.00. What the Trustee fails to note, but which the undersigned previously advised him during a telephone conversation, is that such funding would have been done months down the line and only after Ms. Stennett had borrowed funds in order to enable such payment. It

is shocking that the Trustee would ask this Court to compel Debtor's principal to incur personal debt in order to pay the balance of his Fees. Of course, the Trustee offers no support for such a radical proposition, but instead offers citations that support the more prosaic situation where a dismissal of a bankruptcy is conditioned on the debtor's payment of administrative expenses.

14. A close review of the cases cited by the Trustee reveal the essential distinction between such cases and Debtor's, *i.e.*, that the debtors, rather than third-parties, were charged with paying the allowed administrative fees in order to obtain a dismissal of their cases. In the Subchapter V, Chapter 11 case of *Trevor Lansing Combs* (Case No. 22-14188), which is pending in the United States Bankruptcy Court for the District of Maryland, the individual debtor filed a motion to dismiss his case due to insufficient revenue to fund a Chapter 11 plan. In his motion, the individual debtor noted that he anticipated that he would be able to work out less costly out-of-court settlements with his creditors. The Subchapter V trustee sought approval of $3,429 in fees and that any dismissal of the individual's case be subject to the payment of the approximately $2,429 balance in his fees after application of a deposit. The individual debtor did not oppose this request and, consequently, the bankruptcy court, by Order, dated March 13, 2023, granted the motion to dismiss contingent upon the payment **_by the debtor_** of the trustee's allowed fees.

15. Another case cited by the Trustee is that of *Royal Banquet Hall & Catering LLC* (Case No. 22-22744), which was previously pending in the United States Bankruptcy Court for the Southern District of New York, is similarly inapposite. In that Subchapter V case, the Office of the United States Trustee moved to convert the case to Chapter 11 or, alternatively, dismiss the case on account of the corporate debtor's failure to (i) file schedules and a statement of financial affairs, (ii) provide proof of insurance, (iii) file a 1007-2 Affidavit, (iv) file financial

statements and tax returns, (v) appear for Section 341(a) examination, or (vi) file the required operating report. The debtor did not object to the motion. Mr. Persing, as Subchapter V trustee, sought allowance of fees and such application was approved. The order dismissing the case did not make such dismissal contingent on the payment of the Trustee's fees. The Trustee apparently cites to this case simply because Judge Lane implied at a hearing that he would convert the case to Chapter 7 rather than dismiss it unless the Trustee's fees were paid in that case. According to the Trustee, the principal of the debtor in that case volunteered to pay the full amount of his fees rather than face the prospect of conversion to Chapter 7. Here, Ms. Stennett has not volunteered to pay the Trustee's Fees. If the Court wishes to instead convert the case to Chapter 7 as a consequence, then Debtor does not object even though conversion will only lead to an increase in administrative claims by introducing another professional, the Chapter 7 trustee and/or his/her counsel, into the mix in this already administratively insolvent proceeding.

16. Finally, the Trustee cites to a decision in the traditional Chapter 11 case of *In re Slidebelts, Inc.*, 2020 WL 3816290 (Bankr. E.D. Ca. July 6, 2020). The bankruptcy court in that case was faced with a motion **by the debtor** to dismiss its Chapter 11 case, pay its own counsel, avail itself of the Paycheck Protection Funding Program of the CARES Act, and then immediately re-file the case under Subchapter V of Chapter 11. *Id*., at *1. The unsecured creditors committee objected, citing *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), arguing that the debtor must provide a mechanism for payments of its professional fees otherwise it would be essentially an unlawful structured settlement. After consideration, the bankruptcy court, pursuant to Section 349(b), found that the typical dismissal that would ordinarily restore the status quo ante should be altered due to the reliance by a party in interest (the creditors' committee) on the bankruptcy and therefore denied debtor's motion to dismiss the case.

17. Unlike in *Slidebelts*, Debtor is not considering filing another Chapter 11 proceeding so there is no attempt to render the Trustee's administrative expense claim into an unsecured claim. Further, unlike *Slidebelts*, Debtor is not operating and has no ability to fund the payment of the Trustee's Fees. As such, while the Court could certainly deny the motion to dismiss due to nonpayment of the Fees, all that would mean is that either this case languishes in Chapter 11 without any apparent purpose or the case is converted to Chapter 7 which will not improve the prospects of the Trustee's recovery. What cannot be disputed, though, is that *Slidebelts* does not stand for the proposition that a non-debtor can be compelled to pay a professionals administrative expense claims even if it requires such non-debtor to take on additional debt to do so.

18. As the Trustee has cited no authority that would support his position that a non-debtor can be compelled to pay the administrative expenses incurred in the prosecution of an administratively insolvent corporate Chapter 11 case, Debtor respectfully requests that dismissal not be made subject to payment in full of the Trustee's Fees by Ms. Stennett.

Dated: New York, New York
      March 20, 2023                                BRONSTER, LLP
                                                           *Attorneys for Debtor*

                                         By:       s//J. Logan Rappaport
                                                              J. Logan Rappaport
                                                              156 West 56th Street, Suite 703
                                                              New York, New York 10019
                                                              (347) 826-5051
                                                              lrappaport@bronsterllp.com